[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff claiming a dissolution of marriage and such other relief as may be afforded under Chapter 815 of the Connecticut General Statutes.
The court finds that all statutory stays have expired and that both parties have resided in the State of Connecticut for more than one year prior to the commencement of this action. Trial in this matter was held on July 26, 1996. Both parties were represented by counsel and testified at trial.
Having carefully considered the evidence and testimony adduced at trial, the court finds the following facts to have been proven by a fair preponderance of the evidence:
The plaintiff, whose maiden name was Annette Root, married the defendant Daniel Uhlinger on December 17, 1977 in Bay Village, Ohio. This was the first marriage for both parties. The plaintiff and defendant have one minor child born to them of this CT Page 5261-D union: Megan A. Uhlinger, whose date of birth is November 16, 1983.
The plaintiff is 43 years of age and holds an associates' degree in dietetics from a community college in Ohio. She is a registered dietician with the American Dietetic Association. She was previously employed for nine years as a registered dietetic technician at the Middlesex Memorial Hospital in Middletown and earned $14.11 per hour there as a full-time employee. When the hospital consolidated jobs during a restructuring approximately two years ago, the plaintiff accepted a lower-paying position as a patient support associate in order to be guaranteed full-time employment (an average of 36 hours per week). In her current position, for which she is paid $13 per hour, the plaintiff functions as a housekeeper, nurse's aid, and dietary aid. She earns approximately $25,000 annually from her employment with the hospital.
The plaintiff suffers from a back problem, for which she takes a prescribed muscle relaxant. She takes prescribed medication for depression, and also suffers from a gynecological problem which is referred to at greater length elsewhere in this decision. Despite these maladies, she has worked outside of the home throughout much of the marriage.
The defendant, age 46, is a journalist who has been employed for the past 11 years at the Hartford Courant. He is a town editor with the newspaper and earns approximately $51,000 per annum in gross wages. The defendant has a bachelor's degree in journalism from a college in Missouri, and has taken several post-graduate accounting courses. His earning capacity has historically been twice that of the plaintiff.
The parties jointly own a home at 33 Paley Farm Road in Portland, Connecticut. It is encumbered by a first mortgage with the outstanding principal balance of $174,729. Plaintiff's appraiser values the property at $190,000. (Plaintiff's Exhibit 1). Defendant's appraiser ascribes a fair market value of $184,000. (Defendant's Exhibit 1). However, the parties expressed concern at trial that a sale of the real estate (after deducting a realtor's commission and closing costs) would produce little, or no, equity.
Both the plaintiff and the defendant have pension plans through their respective employers. There was no evidence or CT Page 5261-E testimony introduced at trial concerning the current value of either plan. However, the plaintiff's financial affidavit indicates that she will receive retirement income of $295.79 per month from her pension, commencing July 31, 2018. The defendant's financial affidavit states that he will receive $278 per month from his Hartford Courant pension plan when he attains age 65. Based on the forgoing, the court finds that there is relative parity between the pension assets currently held by each party.
With the exception of several savings and checking accounts and life insurance policies with modest values, the only other marital asset is the defendant's Hartford Courant Employee Profit Sharing Plan account. This account is held solely in the defendant's name and has a current value of $17,885 as of June 30, 1996.
The parties have significant outstanding debts. The plaintiff's affidavit reveals liabilities totaling $7,910. The defendant's affidavit lists debts in the amount of $18,114.
The plaintiff and defendant began having difficulties in their marriage almost from its outset. This was attributable, at least in part, to the fact that they were wed approximately two months after they met, and had only dated seven or eight times prior to the ceremony. The testimony at trials reveals that the couple had little opportunity to discuss their respective goals, ambitions and interests prior to marriage. As a result, the plaintiff and defendant experienced personality conflicts and episodes of incompatibility early in the marriage. These differences were compounded by the defendant's tendency to dominate and control his wife by limiting her contacts with family and friends, and by making unilateral financial decisions. In January, 1990, the plaintiff defied her husband's demand that she cancel a visit with relatives in Boston. When she returned from the trip, plaintiff learned that defendant had signed a real estate agreement listing the jointly-owned family home in Portland for sale. (Plaintiff's Exhibit 2).
It was shortly after this incident that the couple separated for the first time. At that time, the defendant moved from the family home and the plaintiff remained there with her daughter. This separation lasted approximately eight months. The couple attempted reconciliation and resumed residency together in August of 1990. CT Page 5261-F
In December 1990, approximately three months after the couple reconciled, the plaintiff was diagnosed as suffering from a sexually transmitted disease. She received this information on the day after the couple's 13th wedding anniversary. The plaintiff testified at trial that she had not had sexual relations with anyone other than her husband during the marriage. She also testified that when she informed the defendant about the sexually transmitted disease, he expressed sorrow and admitted that he had sexual relations with a prostitute, but claimed that he had used a condom during the encounter. Plaintiff also testified that during a subsequent conversation with the defendant in January, 1991, her husband told her that he suffered from a "sexual addiction" and was "sexually addicted to prostitutes."
During cross examination at trial, the defendant admitted that he had had sexual relations with someone other than his wife during the course of the marriage. He denied that he had had sexual relations with anyone other than the plaintiff since November 1989, and expressed his belief that he was not the cause of his wife's disease. When asked during cross examination whether or not he had ever had sexual relations with a prostitute during the course of the marriage, the defendant invoked his constitutional privilege against self incrimination and refused to answer the question.
The court finds that plaintiff testified credibly with respect to her medical condition, her monogamous relationship with her husband, and about the admissions which defendant made to her. Furthermore, the court infers from defendant's invocation of his Fifth Amendment rights in this civil proceeding that the allegation about his assignation with a prostitute is, in fact, true. (See Olin Corporation v. Castells, 180 Conn. 49, 53-54,428 A.2d 319 (1980)). The court finds as proven by a fair preponderance of the evidence that defendant had sexual relations with a person other than his spouse during the marriage, and that the defendant was the cause of the plaintiff's sexually transmitted disease.
The plaintiff was clearly injured as a result of defendant's actions. She has undergone two surgical laser procedures and a biopsy and must receive repeated pap tests to monitor this condition. The disease has manifested itself on two occasions, and can reoccur in the future. The plaintiff remained married to the defendant and did not file for dissolution until August, CT Page 5261-G 1995, explaining that she believed that defendant had emotional problems and that she hoped that he would change. Despite this fact, the court finds that the defendant's regrettable conduct effectively destroyed any hope of reconciliation between the parties, and played a significant role in the ultimate breakdown of the marriage.
The court, having carefully considered all of the evidence and testimony introduced during the trial, as well as all of the statutory criteria set forth in Connecticut General Statutes § 46b-81, § 46b-82 and § 46b-84, hereby enters the following orders:
(A.) A decree of dissolution may enter, on the grounds of irretrievable breakdown of the marriage;
(B.) The parties shall have joint legal custody of the minor child, Megan. The child's principal place of residence shall be with the plaintiff mother. Defendant's access with his daughter shall be in accordance with the pendente lite custody orders agreed to by the parties and ordered by the court (Gordon, J.) on June 4, 1996, said orders being adopted in their entirety by this court and incorporated by reference in this judgment.
(C.) The defendant, in accordance with the statutory child support guidelines mandated by CGS § 46b-215 (a), shall pay to the plaintiff as support for the minor child the sum of $140 per week. Defendant shall be entitled to claim the minor child yearly as an exemption for state and federal income tax purposes, provided that he is not in arrears on his child support payments for any tax year in which the exemption is claimed.
(D.) The defendant shall provide such medical and dental insurance coverage as may be available through his place of employment for the benefit of the minor child during the term of her minority. All the provisions of CGS § 46b-84 (d) shall apply. The plaintiff and the defendant shall share equally any medical, dental, orthodontic, opthamological, psychiatric, psychological, chiropractic, prescription or other medically related expenses of the minor child which are not reimbursed by such insurance.
(E.) The defendant shall pay to the plaintiff, as periodic alimony, the sum of $100 per week. These periodic alimony CT Page 5261-H payments shall terminate upon the death of either party, or the remarriage of the plaintiff.
(F.) The defendant, in accordance with state and federal COBRA laws, shall maintain the plaintiff under his employer's medical and dental insurance plans for the maximum post-judgment period allowed by those laws. The cost of any premiums which might be charged for the plaintiff's continued coverage shall be shared equally by the plaintiff and the defendant.
(G.) The defendant shall assign to the plaintiff, pursuant to a qualified domestic relations order of this court, the sum of $12,500 from the $17,885 currently in his Hartford Courant Employee Profit Sharing Plan. The remaining balance of $5,385 in said plan shall belong exclusively to the defendant. Counsel for the plaintiff shall draft and submit to the court for its approval and signature an appropriate qualified domestic relations order directed to the custodian of said plan. This court will maintain ongoing jurisdiction with respect to its qualified domestic relations order until its successful implementation. The defendant is ordered to cooperate fully with this order, and shall sign such releases and documents, and furnish such information, as may be necessary to effectuate same.
(H.) The plaintiff shall retain and own exclusively her pension plan account with the Middlesex Memorial Hospital. The defendant shall retain and own exclusively his pension plan account with the Hartford Courant.
(I.) The jointly-owned real estate at 33 Paley Farm Road in Portland, Connecticut shall forthwith be listed for sale with a multiple listing realtor and sold for a price consistent with the parties appraisals. Both parties shall cooperate fully with the expeditious listing, marketing and sale of the property. Any net proceeds from the sale shall be shared equally by the parties. In the event that the gross proceeds from the sale of the home are not sufficient to pay the existing mortgage, real estate commission, and closing costs, any deficiency sum shall be paid one-third by the plaintiff and two-thirds by the defendant. The court will retain ongoing jurisdiction with respect to its order that the property be marketed and sold. Neither party shall mortgage nor in any way further encumber said property during the pendency of its sale. The defendant shall be entitled to the exclusive use and possession of said property pending sale. With reasonable advance notice to the defendant, the plaintiff may CT Page 5261-I enter said property for the purpose of removing such of her personal possessions as may remain in the home, or for the purpose of effectuating the court's orders concerning the marketing and sale of the property. Except as hereinafter indicated, the defendant shall pay all mortgage payments, property taxes, and maintenance costs on said property until it is sold. There is due and owing to Fleet Bank the sum of $1,100, which represents plaintiff's unpaid contributions of $450 per month toward the June and July mortgage payments on the 33 Paley Farm Road property, plus late charges of $200. Plaintiff was obliged to pay these sums pursuant to prior pendente lite orders of the court. Plaintiff shall pay this arrearage, commencing 60 days from the date of judgment, by making monthly payments of $300 per month to the Fleet Bank (or to the defendant, if he elects to make these back mortgage payments) until said arrearage is fully satisfied.
(J.) The plaintiff shall retain and own exclusively her jewelry, her furs, the sums in her Liberty Bank checking account, her interest, if any, in a joint checking account with her mother at the Liberty Bank, her All-State insurance policy, and the 1994 Ford Tempo automobile. As indicated to the court in a post-trial letter from defendant's counsel dated July 29, 1996, the parties have stipulated to the disposition of most of the remainder of their personal property. The court appreciates the cooperation of counsel and the parties in this regard. According to that agreement, the wife shall retain and own exclusively all of the items of personalty listed on schedule "A" of the plaintiff's proposed orders filed with this court on July 26, 1996, with the exception of the washer, dryer and gas grill. The court awards those items to the Defendant.
(K.) The defendant shall retain and own exclusively in his Glastonbury Bank and Trust savings and checking accounts, the sums in his Hartford Courant Credit Union account, his interest, if any, in a joint savings account with his daughter at Glastonbury Bank and Trust, his two All-State Insurance policies and the 1989 Isuzu Trooper automobile. Pursuant to the agreement of the parties as referenced above, the defendant shall also retain and own exclusively the items of personal property listed on schedule "B" of the plaintiff's proposed orders. The refrigerator in the home at 33 Paley Farm Road may be sold, and the proceeds of its sale shall be split equally between the parties. CT Page 5261-J
(L.) During the term that defendant is obligated under the provisions of this judgment to pay alimony and/or child support, the defendant at his cost shall maintain in full force a life insurance policy or policies insuring his life in the aggregate face amount of $100,000 and shall name the plaintiff the irrevocable beneficiary of said policy or policies. The defendant shall annually, upon request, furnish the plaintiff with the name and address of the company or companies insuring his life, the policy number(s) and proof that the insurance coverage ordered herein is in full force.
(M.) Plaintiff shall assume, pay and hold the defendant harmless from the following debts: J.C. Penney ($201); Chase Visa ($1,350); Alan S. Lanney ($20); Natalie Root ($2,161) and that portion of the Town of Portland motor vehicle tax bill attributable to her automobile. The Defendant shall assume, pay and hold the plaintiff harmless from the following liabilities; Citibank Advantage ($3,000); Citizen's Trust ($4,800); G.E.CAF ($600); GC Services ($4,579); Lawn Surgeon ($62.50) and that portion of the Town of Portland motor vehicle tax bill attributable to his automobile. The parties shall share equally the Town of Portland water tax bill ($630), any debt owed to Eileen Shekosky, and the household Credit Service debt ($3,789).
(N.) The court waives the requirement that the parties engage in parent education classes.
The court commends both counsel for the very professional and dignified manner in which they advocated their clients' respective interests during trial.
Dated at Middletown, Connecticut this 9th day of August, 1996.
Dyer, J.